We'll hear the first case, United States v. Estella. The first point is whether or not the court erred in failing to suppress the defendant's statements made on the date of his arrest. As was pointed out in my brief in the reply, the one ability of a waiver of Miranda warnings is contested. The court, hearing the motion to suppress, must indulge every reasonable presumption against the waiver of Miranda rights. The court will examine the totality of the circumstances, and only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Not only did the agent testify, but Ortiz testified at the suppression hearing, right? Pardon me, Judge? I'm sorry. Not only did the agent testify, but Ortiz testified about the Miranda warnings? It's pretty substantial evidence for the district court to rely on, isn't it? Well, what I focused in on my brief was that when I cross-examined Agent Rodriguez-Ross, he had Milton Ortiz, as well as my client, sign a DA Form 88, but Milton Ortiz signed the Form 13 that says that he gave him his rights, but he didn't do that with Mr. Estella, and Agent Rodriguez-Ross didn't have any explanation of why that didn't happen. That was before the district court at the suppression hearing, right? Yes. Yes, it was. And when Milton Ortiz testified for the government, he said that his rights were read in Spanish and that he understood them and that he had overheard conversations with agents in the appellant regarding his right, and Agent Rodriguez-Ross stated that he gave him the rights both at the same time, so these were two witnesses presented by the government. You gave it to them twice, right? When they were both sitting on the couch and then your client in the kitchen and Ortiz could overhear that, wasn't that? Am I missing something? Well, Milton, I don't believe Milton Ortiz testified that the rights were given collectively. He stated that he read the rights and that he overheard conversations, and Mr. Estella, who did testify at the hearing. He read both Miranda rights in Spanish when they were sitting on the couch, and then Estella was taken into the kitchen, and Ortiz testified he overheard the rights again. Am I misstating the record? No, you're not misstating it, Judge, but I think, you know, to conclude that Mr. Estella, who was asleep, who had used heroin the night before, as well as Mr. Ortiz, and who had a sixth-grade education, and who had denied that he had been read his rights, and of course you can always make the argument, well, what is the defendant going to say? But why didn't Agent Rodriguez-Rojas have him sign the DA-13 that he had Milton Ortiz sign? It raises some questions, and it goes to… It raises some questions. I'm sorry. Go ahead. So, it raises some questions. Don't we have to show more than that in light of the standard of review? Well, I mean, those are the facts. Those are the facts that we can… But the facts below, at least as found by the district court, credited the testimony of Agent Rodriguez-Rojas and Ortiz, right? They did, and the issue that I'm raising is I'm asking the court to review it in the light of the points that I brought out. What standard of review would you have us look at? Because generally speaking, in this kind of circumstance, we don't second guess. I understand that, whether or not it was an abuse of discretion to make those determinations, and then the court reviews the law de novo. But I suppose that in the first instance, you rely heavily on the determinations that the court made, and I brought out in the brief and again in this argument why I think that perhaps maybe it wasn't sufficient based on the totality of the circumstances in this court's holding in the Palatano that was cited. What do you think your best argument is? My best argument? You might turn to that. My best argument is that he's on the couch, he's sleeping along with it, he's… He himself stated that he was never read any rights. Agent Rodriguez-Rojas says that he was read his rights, and he was also consented to a search, so they signed the Form 88, but only Milton Ortiz signs the 13, and there's no explanation of why. I mean, it would seem that he would be following the protocol that if there was a consent to search, you sign the deed. If there is a waiver of the rights or you were given your rights, you signed the 13. He didn't sign it. I believe that's my best argument together with the fact that my client has a sixth-grade education. What's your… Would you want to move on to your jury instruction? Yeah, yeah. I was going to do that, Judge. The jury instruction regarding circumstantial evidence, we had requested that with respect to what constitutes a reasonable inference in connection with an element of the offense, the district court did not instruct the jury that it could not draw an inference against the defendant, Luisa Stella, unless it found the fact from which the inference was drawn was proven beyond a reasonable doubt, and the inference itself was established beyond a reasonable doubt. My objection to this charge is the way in which it was presented that you prove a disputed fact by proof of other facts, and it says that's all there is to circumstantial evidence, but I think circumstantial evidence requires more that if we're going to rely on certain facts and we're going to draw certain inferences from those facts, that the facts must be proven beyond a reasonable doubt, and that inference that you conclude is proven beyond a reasonable doubt, because to do anything less is to dilute the burden of proof, and I believe that under those circumstances, especially in this case where there's so much circumstantial evidence… A lot of direct evidence. And there's direct evidence as well, but… In fact, the government's case is mostly direct. Well, it's if we believe the testimony of the co-conspirators, and then, of course, there's a lot of inconsistencies in what they… Or wiretap evidence, too. A couple of phone calls, nothing of any real significance. With regard to the Rule 29 and the Rule 33, they rely heavily on the first two points in regard to circumstantial evidence in regard to whether or not the statement should have been admitted. So I'll just rely on what's on the brief and then just speak briefly on the sentence, if I could, unless you have a question, Judge. Question. You relied to some extent on Triumph. Yes. But Triumph says, and I'm quoting, it just says, the court must be satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element of the offense, like all the elements of the offense, is established beyond a reasonable doubt. But the district court didn't even give that further explanation. It did say, please note, however, that it's not a matter of speculation or guess. It's a matter of logical inference. That was part of the charge, right? Yeah, that was part of the charge. But I don't think that rises to the level of what Winthrop, in the case that was cited, says that we should use in terms of determining the circumstantial evidence, that you simply can't have some facts and then all of a sudden just come to some sort of conclusion. The inference itself has to be proven and the facts from which the inference is drawn must be proven. And it's almost like a two-stage process. And I submit that the district court gave it about a stage-and-a-half process and just left a little bit off on the end and just made it, I respectfully submit, just a little too freewheeling to dilute what circumstantial evidence is. I mean, we can always talk about the classic example. You go to bed at night and there's no snow on the ground. You wake up in the morning and there's snow on the ground, although you didn't see it snow. But that's circumstantial evidence in its most pristine form, in where when you start talking about certain other facts that aren't so clear, that aren't so determinative, that perhaps maybe something more is required. I'm almost, I've got 40 seconds left. If I could just talk just briefly about the sentence. Mr. Estella was involved in this conspiracy, according to the government, for 17 days in July. However, you know, the government relied on the testimony of Ortiz Sr., who testified that he saw Estella packaging heroin two to three times a week during June and July. And we know that that simply isn't the case. You know, the only conclusion is Mr. Ortiz was fabricating testimony and evidence. And I submit that attributing 194 grams of heroin to the appellant isn't, there's no sufficient basis, in fact, in the record, and it's pure speculation. And the substance of objection that I had, that if we looked at all of the facts, the short length of the appellant's involvement, according to the government, just barely two weeks, the speculative conclusion regarding this amount of heroin, the amount of time that he served in jail, since his arrest and sentence, that a sentence of time served would have been a sufficient sentence. I take it that for the purposes of the relevant guideline here, the guideline offense level was based on an amount between 100 to 400 grams of heroin, right? So your argument really is the district judge and the PSR got it wrong as to not just as to 194, but even as to half that amount? Yes, because there wasn't anything sufficient to rely on. I've run over, so if you want me to stop. The sentence was at the bottom of the guidelines range, correct? I don't think it was at the bottom. It was five years. It would have been, if in fact we agree on that amount, then it does. But my argument is that the amount was wrong. Thank you. Thank you. Thank you, Judge. I have one minute in rebuttal. May it please the Court. Starting with where the Court had questions about the jury instruction, I think the fundamental flaw with respect to the requested instruction is that this Court has never said that every fact presented to a jury that is accepted by a jury has to be proven beyond a reasonable doubt. The jury has to look at all the facts that are presented and make a determination whether the elements of the offense are proven beyond a reasonable doubt. And the proffered instruction went too far because it referred to all the facts, not just the elements. With respect to the Miranda waiver, that was a credibility determination by the District Court. I think the Court actually went rather far in explaining that the testimony given by the two government witnesses were both internally consistent and consistent with each other, and there's no basis to disrupt that determination. What about the view that a lower sentence was appropriate, given that the offense was a nonviolent one? There is mental illness. There is substance abuse history. Well, the question is, is a bottom of the guideline range sentence of 51 months substantively unreasonable? Does it shock the conscience? While there are mitigating circumstances here, perhaps the most aggravating circumstance is that Mr. Estella has previously been convicted of a drug trafficking offense, a felony. And I think the Court rightly looked at the sentence that was imposed in that case, conceitedly many years earlier, and said, you know, a bottom of the guideline range sentence here is appropriate, particularly where the Court said it felt that the criminal history was underrepresented but would exercise its discretion not to upwardly depart on that basis. I'm prepared to rest on the brief with respect to all of the other arguments. What about the amount of heroin that's attributed? Your adversary says that the amount was speculative. Well, it was the result of direct testimony. The pre-sentence report came up with that figure based on the amount of heroin that was sold in the ordinary course over the three-week period that Mr. Estella was involved. That's one way to look at it. The other way to look at it, and again, the District Court, I think, aptly did so in terms of foreseeability, referenced the fact that Mr. Estella was found to have or there was testimony that he participated in the packaging of the heroin. So even if he wasn't involved in selling all of the heroin that he packaged, obviously if he packaged it, it would have been reasonably foreseeable to him that that heroin would have been sold. And additionally, you know, the testimony was that the heroin was packaged every other day and there were at least 50 to 100 grams on each of those occasions. So even if we're talking about one week instead of three weeks, we would have heroin in the amount in excess of the 100-gram threshold for the relevant offense level, as you pointed out, Judge. So it's not speculative at all. It's the result of direct testimony. Thank you, Your Honors. Mr. Cimino. Thank you, Judge. Just briefly responding, you know, to the amount and then I'll rest, is the fact that there wasn't enough evidence to believe that during that period of time that that amount of drugs was being packaged. If you look at all of the testimony, they were at the tail end, you know, just before the arrest. And I'd ask the Court to, you know, just critically evaluate that. And in conclusion, I'd like to thank the Court for all the consideration that was given to me to extend the time because I'm a sole practitioner with regarding to the filings and I had hip replacement surgery in September and you allowed that until I could make it here and I truly appreciate that. You seem to be on the mend. I am, Judge. I'm very glad about that. Thank you. Thank you both for your arguments. The Court will reserve decision.